FILED

2023 Feb-13  AM 10:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| DOMINIQUE BOWMAN, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | Case No.:  4:22-CV-1264-RDP |
| | } | |
| ETOWAH COUNTY COMMUNITY | } | |
| PUNISHMENT AND CORRECTIONS | } | |
| AUTHORITY, | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant Etowah County Community Punishment and Corrections Authority's ("Defendant") Motion to Dismiss. (Doc. # 2). The Motion has been fully briefed. (Docs. # 2, 4, 5). After careful review, and for the reasons outlined below, Defendant's Motion is due to be denied.

## I.      Background

Defendant hired Plaintiff Dominique Bowman in 1998 and promoted her to Executive Director of its Community Corrections Program ("Community Corrections") in 2002. (Doc. # 1-2 ¶ 7). Plaintiff served as Executive Director for almost twenty-five years, garnering a reputation for her "work ethic and dedication" as well as the "thorough and accurate" performance of her professional duties. (*Id*. ¶¶ 18-22).

In 2010, Community Corrections began paying the Etowah County District Attorney's Office $64,000 annually for "legal representation attendance and services." (*Id*. ¶ 24). This is not a common practice in Alabama. (*Id*. ¶ 28). In 2022, Plaintiff contacted sixteen other Community Corrections programs around the state, and only two paid any annual fee to their District Attorney's

Offices. (*Id*.). When Plaintiff inquired about this practice, executive directors of other Community Corrections programs in the state expressed their incredulity. (*Id*. ¶¶ 30-31).

In early 2020, the Alabama Department of Corrections ("ADOC") wrote a letter to the Etowah County Community Punishment and Corrections Authority Board of Directors (the "Board") regarding a line item in the Authority's budget entitled "D.A. Contract" totaling $64,000. (*Id*. ¶ 38). In its letter, the ADOC informed the Board that "if the 'D.A. Contract' was considered an 'administrative cost,' then [it] greatly exceeded the percentage amount that could go to 'administrative costs.'" (*Id*. ¶ 39). No Board member responded to the letter. (*Id*.).

Between February 2020 and early 2022, Plaintiff repeatedly confronted the Board about its misuse of the $64,000 in ADOC funds. (*Id*. ¶ 49). In response, the Board criticized Plaintiff for raising insufficient money in client "fees," despite the well-pleaded fact that Etowah County Community Corrections fee collections remained generally on par with similar organizations around the state. (*Id*. ¶¶ 57-59). Ultimately, in March 2022, the Board placed Plaintiff on administrative leave. (*Id*.). In April 2022, Plaintiff provided an affidavit and cover letter to ADOC outlining her "concerns with the Board's budgeting practices, as well as her concerns that the Authority might be violating [] Alabama … laws." (*Id*. ¶ 60). Plaintiff also provided copies of her affidavit and cover letter, as well as a copy of the ADOC's February 2020 letter to the Board. (*Id*. ¶ 61). On April 19, 2022, Plaintiff was terminated from her role as Defendant's executive director. (*Id*. ¶ 70).

## II.    Legal Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12 (b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the "complaint must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*,

550 U.S. at 570.

## III.   Analysis

Public employees do not surrender their First Amendment rights at their employer's threshold. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id*. However, a public employee's First Amendment rights are not unqualified. Public employers (and, when called upon, courts) must strike a balance between the interests of a public employee "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 568 (1968)).

To guide district courts in striking this balance, the Supreme Court in *Garcetti* provided a two-part inquiry based on its earlier decision in *Pickering*. First, a court must determine whether "the employee spoke as a citizen on a matter of public concern." *Id*. at 418 (citing *Pickering*, 391 U.S. at 568). If not, the employee has no First Amendment cause of action. *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). However, if the employee did speak as a citizen on a matter of public concern, the question becomes "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the public." *Id*. (citing *Pickering*, 391 U.S. at 568).[1] The court considers each of these questions, in turn.

---

[1] In *Vila v. Padron*, the Eleventh Circuit included a third part in its inquiry: whether the speech played a "substantial or motivating role in the adverse employment action." 484 F.3d 1334, 1339 (11th Cir. 2007). However, only "the first two elements are questions of law that the court decides." *Id*. Because this third part of the inquiry is a question of fact, it would be inappropriate for the court to consider it at this stage.

4

**A.** **Plaintiff has sufficiently alleged that she spoke as a citizen on a matter of public concern when she sent the affidavit to the ADOC.**

    **i.** **Plaintiff spoke as a citizen rather than as an employee.**

Whether an employee spoke as a citizen on a matter of public concern is a question of law for a court to decide. *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). However, while the Court has provided lower courts with a structure for conducting these inquiries, actually doing so has sometimes "proved difficult." *Garcetti*, 547 U.S. at 418. "This is the necessary product of the enormous variety of fact situations in which critical statements by … public employees may be thought by their superiors to furnish grounds for dismissal." *Id*. (quoting *Pickering*, 391 U.S. at 568) (internal quotation marks omitted).

    "Whereas speech as a citizen may trigger protection, … 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Lane v. Franks*, 573 U.S. 228, 237 (2014) (quoting *Garcetti*, 547 U.S. at 421). Plaintiff relies primarily on *Lane* to support her contention that she spoke as a citizen on a matter of public concern when she sent the affidavit to the ADOC. Defendant counters that *Lane* is distinguishable from this case.

    *Lane* turned on "whether the First Amendment … protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities." 573 U.S. at 231. Lane served as the Director of Central Alabama Community College's ("CACC") Community Intensive Training for Youth ("CITY") Program, a statewide program for underprivileged youth. *Id*. at 231-32. He was responsible for overseeing CITY's daily operations, hiring and firing employees, and making decisions with respect to the program's finances. *Id*. at 232. Upon appointment, Lane conducted a comprehensive audit of the program's

expenses, which revealed that an Alabama State Representative on CITY's payroll had not been reporting to her CITY office. *Id*. After the Representative continued refusing to report to her Huntsville office, Lane fired her. *Id*.

Years later, following the Representative's criminal trial for public corruption during which Lane testified against her, CACC President Steve Franks terminated 29 CITY employees, including Lane. *Id*. at 233. However, Franks soon reinstated 27 of the 29 employees -- Lane was one of those two not reinstated. *Id*. Lane then sued Franks in his individual and official capacities, alleging that "Franks had violated the First Amendment by firing him in retaliation for his testimony against [the Representative]." *Id*. at 234. The district court granted Franks' motion for summary judgment on qualified immunity grounds. *Id*. at 234-35. The Eleventh Circuit affirmed, reasoning that "even if an employee was not required to make the speech as part of his official duties, he enjoys no First Amendment protection if his speech owes its existence to the employee's professional responsibilities and is a product that the employer himself has commissioned or created." *Id*. at 235 (cleaned up).

The Supreme Court reversed, holding that Lane's testimony was "clearly" speech as a citizen on a matter of public concern. *Id*. at 238. The Court reasoned that "[t]ruthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes … even when the testimony relates to his public employment or concerns information learned during that employment." *Id*. Further, the Court emphasized that "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation … to tell the truth." *Id*. Indeed, the Court held that the case presented a particularly clear example of public employee speech:

> The importance of public employee speech is especially evident in the context of this case: a public corruption scandal. The United States, for example, represents

6

that because the more than 1000 prosecutions for federal corruption offenses that are brought in a typical year often depend on evidence about activities that government officials undertook while in office, those prosecutions often require testimony from other government employees. It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials—speech by public employees regarding information learned through their employment—may never form the basis for a First Amendment retaliation claim. Such a rule would place public employees who witness corruption in an impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs.

*Id*. at 240-41 (internal citations and quotations omitted). The Court concluded that "it is clear that Lane's sworn testimony [was] speech as a citizen." *Id*. at 241.

Here, as in *Lane*, the speech in question is sworn testimony concerning potential government corruption. (*See* Doc. # 1-2 ¶ 60). Defendant attempts to distinguish the present case from *Lane*, asserting that (1) "Plaintiff's speech was pursuant to her official duties and within the scope of her duties as Executive Director;" and (2) "Plaintiff's speech did not occur in a judicial forum." (Doc. # 5 at 3-4). But these arguments are unpersuasive.

First, Defendant argues that Plaintiff sending the affidavit to ADOC was pursuant to her official duties as Executive Director of Community Corrections because her duties "were to ensure the Authority complied with ADOC's rules and guidelines for community corrections programs receiving ADOC funding." (Doc. # 2 at 13). But that argument essentially invites the court to return to our circuit's pre-*Lane* understanding of an employee's First Amendment rights. According to this reading of court precedent, speech relating in any way to one's official duties or concerning a subject matter learned of in the course of employment is not entitled to First Amendment protection. *See Lane*, 573 U.S. at 239. However, as the Supreme Court made clear, such a reading of its precedent is far too broad. *Id*. Indeed, "*Garcetti* said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment." *Id*. As in *Lane*, the speech here is sworn testimony, which is "far removed from the

speech at issue in *Garcetti*--an internal memorandum prepared by a deputy district attorney for his supervisors recommending dismissal of a particular prosecution." Thus, the present case requires a similar finding; Plaintiff's testimony was not pursuant to her official duties as Director of Community Corrections.

Second, Defendant argues that Plaintiff did not speak "as a citizen" when sending her affidavit to ADOC because she "was not compelled by subpoena to testify in a judicial proceeding, which creates 'an independent obligation that renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee.'" (Doc. # 5 at 3) (quoting *Lane*, 573 U.S. at 236). Defendant notes that the speech in *Lane* was indeed sworn testimony in a judicial proceeding whereas here Plaintiff's sworn testimony was not made in a judicial forum or in the course of a judicial proceeding. So, while Defendant concedes that Plaintiff's affidavit was sworn testimony, it contends that it is the judicial proceeding (rather than the sworn testimony) that triggers the "distinct and independent obligation, as a citizen, to speak the truth." (*Id.* at 4) (quoting *Lane*, 573 U.S. at 239).

This argument is unpersuasive. To be sure, "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen." *Lane*, 573 U.S. at 238. But, no reading of *Lane* supports Defendant's assertion that sworn testimony is *only* "speech" as a citizen if made in judicial proceedings. Swearing on penalty of perjury that one's testimony is true and correct is sufficient to impress upon an affiant the "formality and gravity necessary to remind the witness that his or her statements will be the basis for official government action." (*Id.*) (quoting *Lane*, 573 U.S. at 241). To discount Plaintiff's testimony because it was not made in a judicial proceeding would do exactly what the Court in *Lane* warned against -- grant "short shrift" to sworn testimony. *Lane*, 573 U.S. at 238. Because Plaintiff's speech consisted of sworn testimony far removed from

the sort of internal communication at issue in *Garcetti*, she spoke as a citizen when she submitted her affidavit to the ADOC.

### ii.    Plaintiff spoke on a matter of public concern.

Having determined that Plaintiff spoke in her affidavit as a citizen, the court now considers whether she spoke on a matter of public concern (as opposed to one of private concern). "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1162 (11th Cir. 2015) (quoting *Connick*, 461 U.S at 146). This inquiry turns on the "content, form, and context" of the speech. *Lane*, 573 U.S. at 241 (quoting *Connick*, 461 U.S. at 147-48).

Here, as in *Lane*, Plaintiff's speech clearly involves a matter of public concern. The content of Plaintiff's affidavit concerns "alleged misfeasance or malfeasance by public officials … regarding their misuse of public funds and/or their governance, or misgovernance of a public entity." (Doc. # 1-2 ¶ 63). As discussed above, the form of Plaintiff's speech is sworn testimony. The context of the speech is Plaintiff's concern that her employer -- a public entity -- may be violating Alabama law. (Doc. # 1-2 ¶ 60). Indeed, Plaintiff's Complaint alleges that she provided the affidavit to ADOC as a matter of "civic responsibility." *Id*. ¶ 65. In sum, the content, form, and context of Plaintiff's speech unambiguously point to her speech constituting a matter of public concern. Because Plaintiff spoke as a citizen on a matter of public concern, the court now proceeds to the second prong of the *Garcetti* inquiry.

### B.    Defendant has not shown an adequate justification for treating Plaintiff in a different manner than the general public.

Whether a relevant government entity has an adequate justification for treating an employee differently from any other member of the public is a question of law for a court to

resolve. *Alves*, 804 F.3d at 1159. However, the parties do not address this question in their briefing, and the record is not sufficiently developed for the court to answer it. *Pickering* and *Garcetti* clearly indicate that, when a plaintiff shows that speech was made as a private citizen on a matter of public concern, the burden shifts to the defendant to show that "they treat every other member of the general public in the same manner." *McShea v. Sch. Bd. of Collier Cty.*, 58 F. Supp. 3d 1325, 1340 (M.D. Fla. 2014). Otherwise, "[d]efendants must … assert[] that they had an adequate justification for treating [the plaintiff] in this manner … in order to defeat [the plaintiff's] First Amendment claim." *Id*. Defendants have not raised either argument. Consequently, the court concludes that at this stage of the litigation, Plaintiff has sufficiently alleged her speech is entitled to protection under the First Amendment. *See id*.; *Slane v. City of Sanibel*, No. 15-cv-181, 2015 WL 4414111 (M.D. Fla. July 17, 2015).

## IV.    CONCLUSION

For the reasons above, Defendant's Motion to Dismiss (Doc. # 2) is due to be denied. An order reflecting this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this February 13, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

10